IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PETER GAKUBA,

            **Plaintiff,**

v.

DAVID RAINS, ROGER MOSS,
MICHELLE NEESE,[1]

            **Defendants.**

Case No. 19-cv-437-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Defendants' motion for summary judgment (Doc. 39). Defendants David Rains, Roger Moss, and Michelle Neese argue that Plaintiff Peter Gakuba failed to exhaust his administrative remedies prior to filing suit. Gakuba filed a response (Doc. 40) in opposition to the motion. On June 16, 2020, the Court held an evidentiary hearing.

### BACKGROUND

Gakuba, an inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Vienna Correctional Center ("Vienna"), filed this Complaint pursuant to 42 U.S.C. § 1983 alleging violations of his access to legal materials and expenses while at Robinson Correctional Center ("Robinson"). Gakuba was allowed to proceed on the following claims:

---

[1] Defendant Moss has identified himself by his proper name, Roger Moss (Doc. 18). The Clerk is DIRECTED to CORRECT the docket to reflect Defendant's proper name.

Page 1 of 11

| | |
|---|---|
| **Count 1:** | **First and/or Fourteenth Amendment claims against Defendants for interfering with Plaintiff's access to the courts from October 2016 until June 2018, by denying his access to photocopies, legal supplies, postage, and a law library.** |
| **Count 2:** | **First Amendment retaliation claim against Defendants for responding to Plaintiff's complaints about legal mail interference in September 2016, by barring additional legal expenses, denying his access to legal supplies, and transferring him to a prison with no law library.** |
| **Count 3:** | **Claim against Defendants for conspiring to retaliate against Plaintiff by denying meaningful access to the courts from October 2016 until June 2018.** |
| **Count 5:** | **Fourteenth Amendment equal protection claim against Defendants for singling out Plaintiff for restrictions on incurring legal expenses.** |

Defendants argue that Gakuba failed to exhaust his administrative remedies prior to following suit. The parties agree that only one grievance is relevant to the claims in this case:[2]

**April 12, 2017 Grievance**

Gakuba submitted an emergency grievance, dated April 12, 2017, and signed by Gakuba on April 13, 2017, directly to the Administrative Review Board ("ARB"). The ARB received the grievance on April 17, 2017 (Doc. 39-2, p. 154-155). The grievance alleges that Wardens Rains and Moss complained about Gakuba's legal debt and informed him that he would not be allowed to incur any more legal costs (Id.). The ARB rejected the grievance, noting that there was no justification provided for additional consideration

---

[2] Defendants identified a number of additional grievances in their motion, but the parties agreed at the evidentiary hearing that only the April 12, 2017 grievance was relevant to this case. Thus, the Court will not discuss those additional grievances.

(Id. at p. 153). The ARB noted that "[t]his is a request, not a grievance." (Id.).

Defendants note that the April 12 grievance includes allegations against Moss and Rains, although it does not name or describe Neese. They argue that the April 12 grievance was not properly exhausted because it was submitted directly to the ARB and did not include a response from the grievance officer or Chief Administrative Officer ("CAO"). Gakuba, who was represented by counsel at the time the response was filed, argues that the grievance was ruled on by the ARB on the merits rather than rejected on procedural grounds. Gakuba also argues that he could submit the grievance directly to the ARB because there was a risk of imminent personal harm because Gakuba suffers from carpel tunnel syndrome and writing his criminal appeal by hand would hurt him.

### LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must

occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Gakuba was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified

in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

Certain grievances are to be sent directly to the ARB. These include: "1) Decisions regarding protective custody placement, including continued placement in or release from protective custody. 2) Decisions regarding the involuntary administration of psychotropic medication. 3) Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned. 4) Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues." 20 Ill. Admin. Code §504.870(a).

## ANALYSIS

The parties agree that the only grievance at issue in this case is Gakuba's grievance dated April 12, 2017. Gakuba testified at the evidentiary hearing that he both placed the April 12 grievance in the grievance box at Robinson, as well as submitted it directly to the ARB. If Gakuba did submit his grievance at Robinson and never received a response, then his attempts at exhaustion would be deemed thwarted, and he would be allowed to proceed with his lawsuit. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the

grievance or uses misconduct to prevent a prisoner from exhausting his resources).

Although Gakuba testified that he submitted his grievance in the grievance box at Robinson, the Court does not find his testimony to be credible. The only evidence he offers in support of his claim is three other grievances he claims he submitted at Robinson but never received a response. These include three grievances submitted in August 2019, two years after his April 12, 2017 grievance was submitted, and the grievances are unrelated to this case (Doc. 20, pp. 6-9). Although Gakuba testified that he had a history of not receiving grievances back while at Robinson, nothing in the record supports this statement. In fact, the records actually reflect that he did receive responses to a number of grievances which were either marked as an emergency or submitted and returned by the counselor (*See* Doc. 39-2, pp. 23, 33, 43, 46, 48, 50, 52, 54, 56, 60, 64, 68, 71, 73, 75, 77, 140, 144). He clearly had a history of properly receiving responses to his grievances if they were submitted, despite his testimony otherwise. This suggests that he did not submit the April 12 grievance as he testified.

Gakuba also offered a number of contradictory statements which undermine his credibility. Although he testified that he submitted the grievance both to the grievance box and directly to the ARB, he also stated that he submitted the grievance to the ARB because they had oversight over the wardens at Robinson. He testified that it was nonsensical to send someone on a fool's errand of going through the grievance process, by sending the grievance to the counselor, grievance officer, and warden, when the warden had a conflict of interest because he was the subject of the grievance. His statement that he believed there was a conflict of interest in the normal grievance process

and was a waste of his time suggests that he did not submit the grievance at Robinson because it would be a "fool's errand." Instead, he submitted the grievance directly to the ARB as the records indicate.

Gakuba also testified that Defendants failed to demonstrate that he was aware of the grievance process. Not only does the argument that he was not aware of the grievance process defy logic because his grievance records are lengthy (*see* Doc. 39-2, pp. 1-156), Gakuba then contradicted himself by stating he submitted the grievance to the ARB because he knew that the grievance process moved at a slow pace, demonstrating knowledge of the grievance process at the time. Gakuba also acknowledged that he entered IDOC in July 2015, and he filed this grievance in April 2017. The ARB's grievance logs shows grievances submitted by Gakuba as far back as January 2016 (Doc. 39-2, p. 3), contradicting his statement that he lacked knowledge of the proper grievance process. Because he offered contradictory testimony that was not backed by the evidence in the record, the Court finds his testimony regarding his April 12, 2017 grievance lacking in credibility. There is no evidence to suggest he submitted the grievance at Robinson, but there is evidence suggesting that it was submitted directly to the ARB. Thus, the Court finds that he did not submit his grievance to the grievance box but, instead, submitted it to the ARB directly where it was received on April 17, 2017 (Doc. 39-2, p. 154).

By submitting the grievance directly to the ARB, the Court finds that Gakuba failed to properly exhaust his April 12 grievance. The grievance process does allow for certain grievances to be submitted directly to the ARB, including grievances about protective custody, involuntary administrative of psychotropic medications, and disciplinary and

other issues at facilities other than the one an inmate is currently housed. *See* 20 Ill. Admin. Code §504.870(a). Gakuba testified that he submitted the grievance directly to the ARB because the ARB had oversight over the wardens. In his motion he argued that he filed the grievance directly to the ARB because it was an emergency and there was a substantial risk of imminent harm due to his carpal tunnel (Doc. 40, p. 3). Neither of these grounds is a proper basis, however, for submitting the grievance directly to the ARB.

Further, the grievance was not considered on the merits by the ARB. "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo*, 286 F.3d at 1025. While the prison administration can refuse to hear a grievance if the inmate fails to properly utilize the grievance process, *see Dole*, 438 F.3d at 809, IDOC officials can excuse a prisoner's non-compliance and review the grievance on the merits. *See, e.g., Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir.2004) (noting that an IDOC prisoner's grievance was untimely, but that IDOC officials nonetheless resolved the grievance on its merits). Gakuba argues that the grievance was ruled on the merits because it was not returned to him with the check marks indicating that he failed to properly attach his counselor and grievance office response as with other grievances which were returned to him. Although Gakuba is correct that the ARB could have also marked those boxes on the return because the grievance did not include the proper responses, the grievance was returned for other procedural issues. The ARB noted that it was being returned because it was not a grievance but a request (Doc. 39-2, p. 153). The grievance was also returned on a "Return of Grievance or Correspondence" form rather than a grievance response form, further

demonstrating that it was not decided on the merits (*See* Doc. 39-2, p. 153 *compare with* Doc. 39-2, p. 15, 24, 41, 57, 61, and 83). Because the grievance was returned to Gakuba on procedural grounds and not decided on the merits, the Court finds that he failed to exhaust his administrative remedies.

## Conclusion

For the reasons stated above, summary judgment (Doc. 39) is **GRANTED** as to Defendants David Rains, Roger Moss, and Michelle Neese. The Clerk is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   June 18, 2020**

*[signature: Nancy J. Rosenstengel]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**